On February 14, 1942, the plaintiff filed a suit against defendant, on two promissory notes, executed in the Parish of Lafourche, one bearing date of May 2, 1941, for the sum of $594.39, payable in installments, and secured by a chattel mortgage, the other bearing date of July 18, 1941, for the sum of $175, due 4 months after date, alleging that defendant was a resident of the Parish of Lafourche. Citation was issued against defendant as being a resident of the Parish of Lafourche, and was personally served on defendant while he was in the Parish of St. Tammany, on February 19, 1942. A judgment by default was obtained by the plaintiff against the defendant on March 11, 1942. On March 19, 1942, a writ of fi. fa. issued directed to the Sheriff of the Parish of Lafourche to seize and sell certain property of defendant situated in the Parish of Lafourche. After formalities of the law being had and performed, the property was sold by the Sheriff on April 25, 1942. Thereafter, another writ of fi. fa. was obtained directed to the Sheriff of the Parish of Orleans to seize property of the defendant. The Sheriff of that parish seized, as the property of the defendant, a certain Dodge de luxe Four Door Touring Sedan automobile, and proceeded to advertise the said property to be sold on October 8, 1942.
On September 29, 1942, Jacques Pelloat, Jr. alleging that he was the holder and owner for a valuable consideration, of a chattel mortgage note, of date of February 26, 1942, made and subscribed by the defendant, Duet, due six months after date, *Page 547 
on which there is a balance due of $524.50, which said note is secured by a chattel mortgage executed before a notary public and which chattel mortgage was duly recorded in the Parish of St. Tammany, on the said Dodge automobile, filed a third opposition claiming the proceeds of the sale of the said automobile in preference and priority over the seizing creditor, and obtained a rule on the seizing creditor to show cause why he should not be so paid.
The plaintiff, the seizing creditor, in answer to the third opposition and rule, set up the defense that since defendant Duet was, on February 26, 1942, domiciled in the Parish of Lafourche, the alleged chattel mortgage should have been recorded in the Parish of Lafourche to affect plaintiff.
On October 3, 1942, a judgment was signed, ordering the Civil Sheriff of the Parish of Orleans to retain in his hands, subject to the further orders of the Court, the proceeds of sale to be made on October 8, 1942.
On October 21, 1942, Jacques Pelloat intervened, and by motion set up practically the same facts which he had set up in his petition of third opposition of September 29, 1942, with the additional allegation that the sale of the automobile had been had, and that the proceeds thereof amounted to the sum of $375, and that in pursuance to the judgment of October 3, 1942, the Civil Sheriff for the Parish of Orleans held the proceeds of the same subject to the further orders of the Court. He further alleged that the Commercial Credit Corporation had, also by motion in third opposition, asserted a chattel mortgage and vendor's lien and privilege against the automobile. He prayed for a rule to issue directed against the Sheriff, seizing creditor, and the Commercial Credit Corporation, to show cause why he should not be paid the proceeds realized from the sale in preference and priority, and particularly in preference to said plaintiff.
The Commercial Credit Corporation, though cited, did not make any appearance.
In answer to this motion in third opposition, the plaintiff, the seizing creditor, admitted that it caused the automobile to be seized and sold by the Civil Sheriff, and that the proceeds thereof amounted to the sum of $375, and which proceeds were in the hands of the Sheriff, subject to further orders of the Court. It denied, however, that opponent was the bona fide holder of such a note, secured by chattel mortgage on the property sold. It denied further that any amount was due third opponent, and also denied that opponent had a valid lien and privilege superior to it. It further alleged that the third opponent did not comply with the laws of this State in that defendant Duet was, on the date of the purported act of chattel mortgage, a resident of the Parish of Lafourche; that the act, in order to affect it, should have been recorded in the Parish of Lafourche, wherein Duet had his domicile; that Duet was working in a defense plant and was temporarily located in the Parish of Orleans.
On these issues, there was judgment ordering the Civil Sheriff for the Parish of Orleans to pay the third opponent the proceeds of the sale in preference and priority over the seizing creditor, the costs of the seizure, advertisement and sale, to be paid from the proceeds; all other costs to be paid by the plaintiff. Plaintiff has appealed.
On February 26, 1942, by an act passed before a Notary Public for the Parish of St. Tammany, and before two witnesses, defendant Duet acknowledged himself indebted unto third opponent in the sum of $700, and for which he executed his note, bearing date of February 26, 1942, payable to himself, due six months after date, and bearing interest at the rate of 6% from date until paid, and to secure the said note, the said Duet gave and granted a chattel mortgage on the Dodge automobile in question herein, and a Ford truck (not involved herein). This act was filed and recorded in the Parish of St. Tammany on March 10, 1942, but was not recorded in the Parish of Lafourche.
The principal issue or controversy in this case is whether or not defendant Duet, the owner of the automobile, was domiciled in the Parish of Lafourche or in the Parish of St. Tammany at the time of the execution of the chattel mortgage act on February 26, 1942.
Under Section 2 of Act 198 of 1918, as amended by Act 178 of 1936, the Chattel Mortgage Law of this State, if Duet was domiciled in the Parish of Lafourche at the time of the execution of the chattel mortgage, in order to affect the plaintiff, a third person, it was necessary for the original or a certified copy thereof to be recorded in the office of the Recorder of Mortgages in the Parish of St. Tammany, where the act of mortgage was executed, and also in the Parish of Lafourche, the domicile of Duet, the mortgagor. *Page 548 
The following evidence was offered by the third opponent Pelloat:
The third opponent testified that he was the brother-in-law of the defendant Duet, Duet having married his sister some four or five years prior to this litigation; that he considered Duet to be a resident of the Parish of St. Tammany; that Duet lived at Madisonville, off and on for the past four and a half years.
Duet, the defendant, testified that he married Pelloat's sister, at Madisonville, about four years prior to this litigation, and lived, off and on, at Madisonville, ever since that time; that he considered that he was a resident of the Parish of St. Tammany; that he was in the business of a hauling contractor which would take him all over the state; that when away from Madisonville, he would store his furniture with his mother-in-law; that at the time of the service of citation in the suit of the Citizens' Bank, and also at the time of the confection of the chattel mortgage act in question he was residing in the town of Madisonville, in the Parish of St. Tammany and was working at a defense job at Slidell. The return on the citation in this suit shows that the petition was served on him in the Parish of St. Tammany.
Irving Steil, a brother-in-law of Duet, having married Duet's sister, testified that he was a professional baseball player and devoted most of his time away from Madisonville. He states that Duet has been living "off and on" in Madisonville, "in fact all over the country". He thinks that Duet was a resident of the community. His testimony is very vague and unsatisfactory.
Cecil Collins testified that he has known Duet since the early part of 1939, and that Duet was living mostly in Madisonville, having an apartment with his mother-in-law; that Duet would leave for a period of a month and a half or two months to go on jobs, but would leave his wife and child with his mother-in-law at Madisonville; that in January, 1942, Duet was residing in Madisonville, and particularly the latter part of February, 1942, when Duet moved in a house he had vacated; that at that time, Duet was working at Slidell. However, he cannot or would not say where Duet considered his residence to be.
Edward Badeau, a first cousin of Duet's wife, testified that when he moved back to Madisonville, in 1939, Duet was living with witness' aunt, and Duet's mother-in-law; that Duet lived there for some six months and then moved to live with opponent; that he always considered Duet as a resident of Madisonville, but admits that he did not know Duet any too well; that Duet would be in Madisonville off and on. On cross-examination nothing else could be gotten from him.
Joseph Defenso testified that he knew Duet for the past three or four years and does not know where Duet was living. He would see Duet off and on in Madisonville and did not know how much time Duet would spend in Madisonville. He stated that he could not say that Duet was considered as a resident of Madisonville.
The following evidence and circumstances are in favor of the plaintiff:
Mr. Sims, the President of the plaintiff bank, testified that he knew the defendant for the past five or six years and knew his father; that defendant did business with his bank, visiting the bank quite frequently, and considered him a resident of Lafourche Parish, and in fact had no knowledge that defendant claimed any other parish as his residence or domicile.
Mr. Hoffman, the cashier of plaintiff Bank, testified that he was the one who arranged the loan with defendant; that it was his understanding that defendant resided in the Parish of Lafourche, at his father's residence about 3 miles from Thibodaux; and that in January, 1942, defendant rented a house in Thibodaux and lived therein; that he was present when the chattel mortgage, on May 28, 1941, was executed by the defendant to plaintiff, and that defendant then declared that his residence was in the Parish of Lafourche; that the first knowledge he had that defendant was claiming another parish as his domicile was when third opponent filed his opposition.
Antonio Billelo testified that he rented a house to defendant in Thibodaux; that defendant moved his furniture therein; lived with his family therein, and moved therefrom between the 8th and 10th of January, 1942.
Miss Byrdie Naquin testified that she was the Clerk of the Draft Board for the Parish of Lafourche; that the defendant is a registrant of that Local Board; that he registered with the Board on October 16, 1940; that he then gave his residence or domicile as being in the Parish of Lafourche and he has not changed the designation of his residence. *Page 549 
Plaintiff then offered an excerpt of an original Act of Chattel Mortgage of date of June 22, 1940, executed by defendant wherein he declares his domicile to be in the Parish of Lafourche. This Act of Mortgage was recorded in the Parish of Lafourche.
Plaintiff then offered an excerpt of an original Act of Chattel Mortgage of date of November 25, 1941, executed by defendant in the Parish of Orleans, in favor of Cathey Chevrolet Co., wherein defendant again declares that his domicile is in the Parish of Lafourche. This Act of Mortgage, though executed in Orleans Parish, was recorded in the Parish of Lafourche.
Plaintiff then offered an excerpt of a suit filed on November 5, 1941, in the Parish of Lafourche by defendant against the Drexler Motor Company of said Parish, wherein defendant judicially declared that he was a resident of the Parish of Lafourche.
Plaintiff then offered the original registration certificate of defendant before the Registrar of Voters for the Parish of Lafourche, wherein defendant, on November 2, 1939, certified that he was a resident of the Parish of Lafourche continuously since 1915.
In the act of chattel mortgage passed before Hubert A. Lafargue, Notary Public for the Parish of Lafourche, on May 28, 1941, Duet declares that he is "married to Mistress Fay Pelloat, with whom he resides in the Parish of Lafourche".
Defendant was born and reared in the Parish of Lafourche. His father lives in the Parish of Lafourche. He admits having lived with his father, but seeks to explain his living with his father as "it wasn't for long, but off and on". He also admits renting a house from Mr. Bellelo, but states that it was for four or five weeks. He admits doing business with the plaintiff's bank, and seeks to qualify this admission by stating that it just "happened that I was in Lafourche Parish". He admits signing the act of chattel mortgage of date of May 25, 1941, before Mr. Lafargue, which act of chattel mortgage contains the declaration of his residing with his wife in the Parish of Lafourche. He seeks to explain this declaration by stating that "I didn't know that I would be liable to spend a month here in Thibodaux". He admits swearing to the petition in his suit against the Drexler Motor Co., and states that at that time all of the allegations of the petition were true, but "I just happened to be there". He does not seek to explain the several other declarations as contained in the chattel mortgage acts filed in evidence, nor his registration as a voter, nor his registration with the Local Draft Board for Lafourche Parish. Another significant fact is that he was sued by plaintiff as being domiciled in the Parish of Lafourche, yet he did not file any plea to the jurisdiction of the Court. These declarations, all in authentic form, were made at an unsuspicious time. It is our opinion that his claiming that he was domiciled in the Parish of St. Tammany for the past four to five years is merely an afterthought and for the purpose of screening his property.
Third opponent Pelloat would want it to appear that he was totally ignorant of all of these facts and would want this court to believe that his brother-in-law was domiciled in the Parish of St. Tammany and had been for a period of over four years. A few days after Duet was served with citation of this suit, he and his brother-in-law visited the City of Covington and sought a notary public to pass the act. He states that he made a bona fide loan to his brother-in-law of the sum of $700; that he kept this money at home, yet he admits that he was accustomed to deposit and to do business with a bank. He states that the loan was made in order that his brother-in-law could repair his trucks. He admits that his brother-in-law, at that time, was working on a defense job at Slidell, not in the trucking business, and his brother-in-law states that he needed the money to live. His brother-in-law states he kept the money in his pocket and used it in three or four months. His brother-in-law also admits that he was working at Slidell on a defense job. All of this evidence was introduced without objection. It may not be sufficient to avoid and set aside the act of chattel mortgage upon which the third opponent claims a superior right to the proceeds, but it is sufficient to show the bad faith of the third opponent and his brother-in-law, Duet, the defendant. We are of the opinion that this act was confected to screen the property of the defendant from pursuit of his creditors and particularly the plaintiff.
For these reasons, the judgment appealed from is annulled, reversed and set aside. It is ordered that the demand of third opponent Jacques Pelloat be denied and dismissed *Page 550 
at his costs. It is further ordered that the Civil Sheriff for the Parish of Orleans pay the proceeds of the sale, after deducting the cost of seizure, advertisement and sale, to the plaintiff, Citizens Bank Trust Company.